# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1926 | **DATE** | 12/19/2000 |
| **CASE TITLE** | Trustmark Ins vs. General & Cologne Life Re of America | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's Motion to Compel Production of Documents by Plaintiff Trustmark Insurance Company (9-1) is granted in part and denied in part. Status hearing set for 1/17/01 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | **2** number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 20 2000 date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 12/19/2000 date mailed notice | |
| VKD | courtroom deputy's initials | VKD6 mailing deputy initials | |

FILED FOR DOCKETING
00 DEC 19 PM 6: 07

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTMARK INSURANCE COMPANY., | ) Case No. 00 C 1926 |
| Plaintiff, | ) |
| v. | ) Judge Blanche Manning |
| | ) Magistrate Judge |
| GENERAL & COLOGNE LIFE RE OF | ) Arlander Keys |
| AMERICA, | ) |
| Formerly known as COLOGNE LIFE | ) |
| REINSURANCE COMPANY | ) |
| Defendant. | ) |



## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant General Cologne Life Re of
America's ("Cologne") Motion to Compel Production of Documents By
Plaintiff Trustmark Insurance Company ("Trustmark"). Trustmark
claims that the documents at issue in this case are protected by
the attorney-client privilege and/or the work product doctrine.
Cologne, conversely, maintains that Trustmark's Privilege Log,
describing the documents at issue in this case, is vague, and
otherwise insufficient to justify the alleged privileged nature of
the documents. Cologne further argues that any privilege that
does exist has been waived. The documents at issue in this case
have been submitted to the Court for an *in camera* review. For
the reasons set forth below, the Court grants in part and denies

in part Defendant Cologne's Motion to Compel Production of Documents.

## BACKGROUND

The underlying dispute between Trustmark and Cologne concerns whether there was a "joint venture" between the parties in which they were to acquire a block of Individual Disability Income policies ("the IDI block" or "Hartford block") from Hartford Life Insurance Company and Hartford Life and Accident Insurance Company (collectively "Hartford Life"). Trustmark's Complaint, which was removed to the Northern District of Illinois on March 30, 2000, alleges that, on October 28, 1998, Trustmark entered into a "binding letter of intent" with Hartford Life to purchase the IDI block, and that Cologne, as a joint venturer, was to bear 50% of Trustmark's risk arising out of the IDI block, or alternatively, that Cologne was contractually obligated to reinsure 50% of Trustmark's risks on those insurance policies.[1]

However, on September 3, 1999, Cologne advised Trustmark, by letter, that it did not want to participate in the proposed transaction with Hartford Life, and ultimately, decided not to go

---

[1] While there was no written joint venture agreement or reinsurance contract between Trustmark and Cologne, Trustmark bases its Complaint on allegations of oral contracts and promissory estoppel.

forward with the transaction.[2]   Nonetheless, in December 1999,

Trustmark entered into an agreement with Hartford Life.   Trustmark

maintains that, after September 3, 1999, when it received what it

deemed a repudiation of Cologne's agreement to participate in the

joint venture, it organized a group of employees (including two

in-house attorneys), and one independent contractor, to form a

"control group" to deal with the anticipated litigation over

Cologne's September 3, 1999 refusal to participate in the joint

venture.[3]

During the ensuing litigation, Trustmark has withheld a

series of memos and notes regarding seven meetings occurring on

September 7, October 4, 11, 18 and 25, and November 1, 22 and 29,

---

[2] Specifically, the September 3, 1999 letter stated, in
relevant part: "We [Cologne] know you [Trustmark] have attempted
for many months to resolve outstanding issues on this reinsurance
deal, principally the question of whether previously existing
reinsurance on the block would continue, and problems with the
data that had been provided prior to the letter of intent. Having
waited many months for finalization of the agreements, and with
no clear progress to resolve those issues, the conditions of the
letter of intent are not met and we are forced to conclude that
no agreement is in effect."   (See Plaintiff's Memorandum in
Response to Defendant's Motion to Compel ["Pl.'s Memo"], Ex. 2 of
Ex. A.)

[3] Whether each member of Trustmark's supposed "control group"
is truly a member of the "control group," as understood in
Illinois, is one of the issues before the Court.  As explained
supra, the Court finds that two Trustmark employees were not
properly part of Trustmark's "control group."

-3-

1999. Trustmark maintains that these documents are protected by attorney-client privileged communications and/or the work product doctrine, as they were all created after Cologne's September 3rd repudiation of the joint venture. Cologne contends that Trustmark's Privilege Log does not specify who attended these meetings or the specific subject matter discussed. Furthermore, Cologne believes that these meetings were either between Hartford Life and Trustmark employees regarding their renegotiation of their proposed agreement, or meetings among Trustmark employees about the Hartford Life negotiation, and consequently, did not concern anticipated litigation with Cologne and/or legal advice. Hence, according to Cologne, these documents are not privileged, and even if they were, the privilege has been waived because (1) Trustmark showed the documents to employees outside the "control group"; and (2) Trustmark has waived any privilege concerning documents relating to its contractual relationship with Hartford Life by injecting that issue into the case.[4]

## DISCUSSION

The matter immediately before the Court involves the applicability of the work product doctrine and attorney-client

---

[4] As explained *supra*, this argument is based on the "at issue" waiver of privileged communications.

privilege to Document Nos. 1,3,4,5,6,7,8,11,12,13,14,15,and 19 on

Trustmark's Privilege Log.[5] "Because the attorney-client privilege

and work-product doctrine obscure the search for truth, both

should be confined to their narrowest possible limits to minimize

the impact upon the discovery process."[6] *Ziemack v. Centel Corp.*,

No. 92 C 3551, 1995 WL 314526, at * 2 (N.D. Ill. May 19,

1995)(citations omitted).

## A. Attorney-Client Privilege[7]

The attorney-client privilege is designed to protect, from

discovery, documents which reflect communications made in

confidence by the client. *Ziemack, supra*, 1995 WL 314526, at * 3

(citation omitted). The privilege applies to communications by a

---

[5] In Cologne's Motion to Compel, it asked for Document Nos. 2,9,10 and 16 on Trustmark's Privilege Log, as well as the documents listed above. However, Trustmark provided Document Nos. 2,9,10 and 16 to Cologne sometime before its Response to Cologne's Motion to Compel. Therefore, Document Nos. 2,9,10, and 16 are no longer at issue in this case, and the Court will not address Cologne's arguments with respect to their production.

[6] Trustmark contends that the attorney-client privilege applies to all documents at issue in this case, and that the work product doctrine applies to all document nos. except Document No. 6 (where the attorney-client privilege only applies.)

[7] In diversity cases, such as the case *sub judice*, Illinois law determines the applicability and scope of the attorney-client privilege. *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 192 F.R.D. 263, 265 (N.D. Ill. 2000).

client to a lawyer and vice versa. *Certain Underwriters at Lloyds v. Fidelity and Cas. Co. of New York,* No. 89 C 0876, 1997 WL 769467, at * 2 (N.D. Ill. Dec. 9, 1997). Under the attorney-client privilege, (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991). The party seeking to invoke the attorney-client privilege bears the burden of establishing all essential elements of the privilege. *Id.*

Not every disclosure from client to attorney is entitled to protection from discovery. *Ziemack, supra,* 1995 WL 314526, at * 3 (citation omitted). The attorney-client privilege "`. . . protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege.'" *Id.* (citation omitted). "Thus, communications from the attorney to the client should be privileged only if the statements do in fact reveal, directly or indirectly, the substance of a confidential communication by the client." *Id.* at

*4 (citation omitted). Furthermore, the attorney-client privilege does not protect communications primarily regarding business advice. "Thus, for the privilege to apply, counsel must be involved in a legal, not business, capacity, and the confidential communications must be primarily legal in nature." *Id.* (citation omitted).

### B.   Work Product Doctrine[8]

The work product doctrine protects from disclosure documents and tangible things otherwise discoverable that were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." Fed. R. Civ.P. 26(b)(3). "It exists so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories." *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 630 (N.D. Ill. 1999)(citation omitted).

For documents prepared prior to the filing of a lawsuit, as is the case at bar, the "prospect of litigation" must be identifiable because of specific claims that have already arisen.

---

[8] Unlike the attorney-client privilege, the work product doctrine is governed by a uniform federal standard even in diversity cases. *Dawson v. New York Life Ins. Co.*, 901 F.Supp. 1362, 1367 (N.D. Ill. 1995).

*Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 725, fn 6 (N.D. Ill. 1978)(citation omitted). The test is "whether in light of the factual context the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Wsol v. Fiduciary Management Associates,* Inc., No. 99 C 1719, 1999 WL 1129100, at *2 (N.D. Ill. Dec. 7, 1999)(citation omitted). Although the prospect of litigation need not be imminent, it must, nevertheless, appear that the primary motivating purpose behind the creation of a document must be to aid in possible future litigation. *Dometic Sales Corp. v. Intertherm, Inc.*, Civ. No. S87-81, 1988 WL 492342, at * 11 (N.D. Ind. March 28, 1988) (quotation and citation omitted). Additionally, a document is only considered work-product if it is primarily concerned with legal assistance. *In re Stern Walters Partners, Inc.*, No. 94 C 5705, 1996 WL 115290, at * 4 (N.D. Ill. March 13, 1996)(citation omitted).[9]

A party may obtain access to an opponent's work product only

---

[9] It is important to note that the work product doctrine extends to documents prepared by a party's representative or agent and not just the attorney. *See, e.g., Ventre v. Datronic Rental Corp.*, No. 92 C 3289, 1993 WL 524377, at *3 (N.D. Ill. Dec. 13, 1993).

upon establishing a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ.P. 26(b)(3). This is a difficult burden to meet, and is likely to be satisfied only in "rare situations, such as those involving witness unavailability." *Scurto v. Commonwealth Edison Co.*, No. 97 C. 7508, 1999 WL 35311, at *2 (N.D. Ill. Jan. 11, 1999) (citation and quotations omitted). Moreover, even if a party satisfies that burden, the door is not opened to all attorney work product. Rather, Rule 26 draws a distinction between "opinion" work product and ordinary work product. Rule 26(b)(3) provides that, even when a showing has been made sufficient to require production of attorney work product, "the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ.P. 26(b)(3); *see also Ziemack, supra*, 1995 WL 314526, at * 6 (holding that Rule 26 specifically protects "opinion" work product from disclosure even in the face of undue hardship). This suggests that the protection of opinion attorney work product (as opposed to ordinary work product) is for "all

intents and purposes absolute." *Scurto,* 1999 WL 35311, at *2 (citation omitted). In the case *sub judice,* Defendant has made no showing of substantial need sufficient to invade the work product immunity. Therefore, the Court need not address what portions of the documents at issue in this case, protected by work product, involve "opinion" work product as opposed to ordinary work product.[10]

## C. Waiver of Applicable Privileges

As a preliminary matter, it must be stressed (because neither party addresses this point in their motions) that there are different standards applied for waiver of work product protected communications as compared to attorney-client communications. As explained in *Wsol, supra,* unlike the attorney-client privilege, which is based on protecting the confidentiality of communications between lawyers and clients, the work product doctrine is based on promoting the adversary system, by protecting the confidentiality of materials prepared by an attorney in anticipation of litigation. 1999 WL 1129100, at * 6 (citation omitted). Hence,

---

[10] Cologne's only discussion of "substantial need" concerns Document Nos. 2 and 16, which have since been produced, and consequently, are no longer at issue in this case. (*See* Cologne's Memorandum in Support of its Motion to Compel at 13-14.)

waiver of the work product doctrine only occurs if the disclosure to a third party is "inconsistent with the maintenance of secrecy for the disclosing party's adversary." *Minnesota School Boards, supra*, 183 F.R.D. at 631 (citation omitted); *see also Bramlette v. Hyundai Motor Co.*, No. 91 C 3635, 1993 WL 338980, at *3 (N.D. Ill. Sept. 1, 1993)("While any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the confidential relationship and thus waives the privilege, it is not inconsistent with work product protection to disclose information in the pursuit of trial preparation, so long as the information is maintained in secrecy against the opponent.").

Here, and as explained in more detail *supra*, there has been no waiver of the work product doctrine, since Trustmark clearly intended and expected that its communications at meetings with its alleged "control group" would remain confidential and protected from adversaries such as Cologne. Each document at issue is labeled as confidential and privileged, and the Court has no reason to disbelieve Trustmark's assertion that it created, what it considered a "control group", after September 3, 1999, to investigate and strategize about Cologne's repudiation of what Trustmark considered a binding joint venture agreement. Thus,

even if Trustmark showed these documents to members who were not properly part of its "control group," as long as those members were adversaries to Cologne, the work product privilege would not be waived.

With respect to the attorney-client privilege, however, the law on waiver is not as forgiving. Because Illinois follows the "control group" test to determine whether an employee's communications with corporate counsel are protected by the attorney-client privilege, Cologne correctly contends that, if Trustmark showed its attorney-client privileged communications to employees outside Trustmark's "control group," then the attorney-client privilege would be waived (or would not apply). *See, e.g., Archer Daniels Midland Co., v. Koppers Co., Inc.*, 485 N.E.2d 1301 (Ill. App. Ct. 1985)(finding engineer's report not attorney-client privileged because engineer was not a member of employer's "control group").

Cologne asserts that, at least three members of Trustmark's supposed "control group", are not properly members of the "control group", and that therefore, the attorney-client privilege has been waived with respect to all documents that were shown to these non-control group individuals. While the Court finds that independent

contractor Christopher Kinback was properly a member of Trustmark's control group, the Court has concerns about employees Bill Blohm, Second Vice President of Administration, and Steve Schattner, Manager of Policyholder Services, who according to Raymond Lester, Vice President and Associate General Counsel for Trustmark, appear to have merely supplied information to Frederick Schick, Executive Vice President of Personal Insurance, about non-legal issues, and did not contribute, or have the ability, to make any final decisions concerning legal issues. (*See* Pl.'s Memo, Ex. A, Lester Aff. at ¶ 5.)

> 1. **Mr. Kinback is a Member of the "Control Group".**

The Court finds that independent contractor Mr. Kinback was properly part of Trustmark's "control group", because he was an agent of Trustmark who served as an advisor to top management and was "consulted for the purpose of determining what legal action the corporation" would pursue. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 258 (Ill. 1982). According to Trustmark, Mr. Kinback was initially hired on August 13, 1999, by Trustmark's senior management, to build a new, individual disability claims organization, but, following Cologne's September 3, 1999 repudiation of the joint venture, Trustmark expanded Mr.

Kinback's role to include evaluating Cologne's assertions about the claims-handling process regarding the Hartford block, and to ultimately advise senior management. According to Mr. Lester's affidavit, no management decision regarding Cologne's assertions about Trustmark's claims-handling practices would be made without Mr. Kinback's advice and recommendation. (*See* Pl.'s Memo, Ex. A, Lester Aff. at ¶ 5(F).)

The recent case, *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 192 F.R.D. 263 (N.D. Ill. 2000), fully supports this Court's conclusion that Mr. Kinback was properly included in Trustmark's "control group". *Caremark* held that the attorney-client privilege in Illinois may protect communications between a non-employee agent, such as Mr. Kinback, and a corporation, if the corporation can show: (1) the non-employee agent served as an advisor to top management of the corporate client; (2) this advisory role was such that the corporate principal would not normally have made a decision without the agent's advice; and (3) the agent's opinion or advice in fact formed the basis of the final decision made by those with actual authority within the

corporate principal.[11]    *Caremark,* 192 F.R.D. at 267 (citing

*Consolidation Coal, supra,* 432 N.E.2d at 258).

The Court finds that the foregoing criteria have been met,

and that Mr. Kinback was a part of Trustmark's control group.

While Cologne compares Mr. Kinback's role to the engineer in

*Archer Daniels, supra*, who merely supplied technical data and

opinions to senior management, and was not found to be a member of

the control group, this Court finds, after its *in camera* review of

the documents, that Mr. Kinback played an integral part in

Trustmark's decision-making process with respect to the IDI block

and ensuing litigation with Cologne, and that a decision about

this litigation would "not normally be made without his [Mr.

Kinback's] advice or opinion . . ." *Consolidation Coal, supra,*

432 N.E.2d at 258.

---

[11] Cologne argues in its Reply that the holding in *Caremark*
was confined to "the narrow situation where the corporation gives
express authority to a non-employee agent to communicate with
attorneys on behalf of the corporate principal for the purpose of
receiving legal advice," (*see* Defendant's Reply Memorandum at 7,
quoting *Caremark*, 192 F.R.D at 267), and that this limited
holding does not accurately describe Mr. Kinback. The Court
disagrees and notes that, with respect to Document No. 1, for
instance, Trustmark's in-house attorney, Mr. Lester, specifically
requested Mr. Kinback's advice regarding the IDI block and
Cologne's apparent repudiation of the joint venture.

### 2. Employees Mr. Blohm and Mr. Schattner Are Not Members of the "Control Group."

According to Mr. Lester, employees Bill Blohm and Steve Schattner served as direct advisors to Frederick Schick, and had direct contact with Lincoln National and Swiss Re, which reinsured significant portions of the Hartford block. (*See* Pl.'s Memo, Ex. A, Lester Aff. at ¶ 5.) According to Mr. Lester, Mr. Schick headed the business unit at Trustmark that had direct responsibility for the Hartford block after January 1, 1999, and, collectively with two other Trustmark high- level employees (Mark McKinlay and Jack Eckert, respectively), made final management decisions. (*Id.*) In other words, Mr. Blohm and Mr. Schattner advised Mr. Schick about the status of reinsurance arrangements, and then Mr. Schick, along with two other high-level individuals, made final management decisions.

While the "control group" test is generally satisfied only by management level employees with the ability to make final decisions (such as Mr. Schick), individuals "whose advisory role to top management in a particular area is such that a decision would not normally be made without [their] advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority, [are] properly within the control

group." *Consolidation Coal*, 432 N.E.2d at 257-58. "Thus, if an employee of the status described is consulted for the purpose of determining what legal action the corporation will pursue, his communication is protected from disclosure." *Id.* at 258.

In the case at bar, the Court is unable to conclude, based on the information that Trustmark has provided, that Mr. Blohm and Mr. Schattner were proper members of Trustmark's "control group." Significantly, it is the party who claims the privilege that has the burden of showing the facts which give rise to the privilege. *Consolidation Coal*, 432 N.E.2d at 257-58. Here, there is no evidence that Mr. Blohm or Mr. Schattner occupied an advisory role in an area that such a decision would not normally be made without their advice or opinion, or that they otherwise contributed to decision- making on a legal (as opposed to business) issue. While they may have provided facts about reinsurance arrangements to senior management, the focus of the Court for finding privilege is "on individual people who substantially influenced decisions, not on facts that substantially influenced decisions." *Archer Daniels, supra*, 485 N.E.2d at 1304. Indeed, in *Consolidation Coal* and *Archer Daniels*, for example, the court found that employees who provided the technical information about accidents and safety

features to opinion makers, were not themselves in the control group and, therefore, their communications were not privileged. Similarly, the Court finds that Mr. Blohm and Mr. Schattner's information about reinsurance arrangements, provided to senior management, is akin to providing technical information, and does not make them part of the "control group."  In sum, an employee is not a member of the control group if top management merely relies upon him for supplying information.

Particularly telling is that, in Mr. Lester's affidavit, of the twelve employees that are described as being part of the "control group," only Mr. Blohm and Mr. Schattner are not depicted as being consulted before management decisions were made. Furthermore, as pointed out by Cologne in its Reply, Trustmark has failed to explain how information pertaining to reinsurance and third party reinsurers (that of which Mr. Blohm and Mr. Schattner advised Mr. Schick) has any connection to Trustmark's claims against Cologne.[12]

However, as explained *supra*, because the Court finds that

_____

[12] Also informative is deposition testimony of Michael Plazony, Trustmark's Vice-President of Administration, who said that he, essentially, could not explain how the issue of reinsurance had any connection to Trustmark's claims against Cologne.  (Defendant's Reply Memorandum, Ex. 1, Plazony Dep. at 169-75.)

-18-

Documents Nos. 1,3,4,5,7,8,11,12,13,15 and 19 are protected by the work product doctrine, showing these documents to employees Mr. Blohm and Mr. Schattner, non-control group employees, does not waive the work product privilege. "'While the mere showing of a voluntary disclosure to a third party will generally suffice to show wavier [sic] of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.'" *Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 90 C 7127, 1993 WL 625511, at * 3 (N.D. Ill. July 21, 1993)(citation omitted). Therefore, regardless of whether employees Mr. Blohm and Mr. Schattner were truly part of Trustmark's "control group", Document Nos. 1,3,4,5,7,8,11,12,13,15 and 19 remain privileged based on the work product doctrine.[13]

### 3. The "At-Issue" Waiver Does Not Apply.

Cologne argues that the December 1998 letter of intent was not binding on Trustmark, and therefore not binding on Cologne. Cologne maintains that, as part of Trustmark's case in chief, Trustmark must prove that it was bound by the letter of intent to

---

[13] Although Cologne asserts in its Reply that showing work product protected documents to non-control group employees waives the work product doctrine, Cologne cites no cases for this proposition. (*See* Defendant's Reply Memorandum at 4.) Indeed, as explained *infra*, the work product doctrine is not as easily waived as the attorney-client privilege.

complete the transaction with Hartford Life. Consequently, Cologne argues that, to the extent that any documents on the Privilege Log relate to the legal issue of whether or not Trustmark was legally bound by the letter of intent with Hartford Life, any applicable privilege has been waived. This argument is based on the "at issue" waiver of privileged communications.

While this argument may have surface appeal, the Court finds that the "at issue" waiver does not apply in this context, because Trustmark has not put its communications with its counsel or its work product at issue in this litigation. As explained in *Certain Underwriters, supra,* 1997 WL 769467, at * 3, a party must affirmatively try to use the privileged communication to defend itself or attack its opponent in the lawsuit before the "at issue" waiver may apply. In addition, *Certain Underwriters* held that this exception can only apply if allowing privileged communications to protect against disclosure would be "manifestly unfair" to the opposing party. *Id.*

A review of cases applying this principle further illustrates that the "at issue" waiver is not applicable to the present controversy. For instance, in *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.,* 176 F.R.D. 269, 272 (N.D. Ill.

1997)(citation omitted), the court held that the implied waiver (or "at issue" waiver) of privileged communications occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires the examination of the confidential communications." Furthermore, in *In re JMP Newcor Intern., Inc.*, 204 B.R. 963, 965 (N.D. Ill. 1997), the court explained that the at-issue waiver exception to privileged communications is most frequently applied when (1) the attorney is a defendant against a charge of professional negligence or breach of duty, or (2) in "bad faith" insurance litigation, where the insurer is sued for the position taken in the underlying coverage litigation. In *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975), a case relied on by Cologne, the court held that defendants who raised an affirmative defense of qualified immunity, in an action brought under 42 U.S.C. § 1983, waived the attorney-client privilege with respect to legal advice relating to the issues of malice or knowledge of plaintiff's legal rights. *See also Scurto, supra,* 1999 WL 35311, at *5 (holding that a party can waive attorney-client or work product immunity by placing at issue the advice or work product of counsel); *Johnson v. Rauland-Borg Corp.*, 961 F. Supp. 208, 211 (N.D. Ill. 1997)

(finding privilege waived, in Title VII case, where employer "intends to argue that it is not liable because it acted reasonably by employing the outside attorney to investigate the matter."); *Hucklo v. City of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999)(holding that advice of counsel is placed in issue where the client "asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."); *Panter, supra,* 80 F.R.D. 718 (N.D. Ill. 1978)(finding that the at-issue waiver applied where defendants asserted as an essential element of their defense reliance upon advice of counsel).

The aforementioned cases show that the "at issue" waiver is used where the activities of counsel are directly at issue. Here, Trustmark has not placed, or affirmatively relied on, advice of counsel or counsel's work product to establish any element of its case in chief. Significantly, the truthful resolution of whether the letter of intent with Harford Life was legally binding does not require the disclosure of privileged communications. Merely because Trustmark's counsel may have discussed this element of Trustmark's case, and embodied those discussions in privileged documents, does not mean that Cologne has a right to those

communications. Such a rule would undermine the very protection offered by the attorney-client privilege or work product doctrine.[14] As eloquently stated in *Hucklo, supra*, "[a]dvice is not in issue merely because it is relevant . . . ." 185 F.R.D. at 529.

## D. Application of Privileges to Documents

While unable to disclose the specific facts contained in each respective document, the Court finds that Document Nos. 1,3,4,5,7,8,11,12,13,15 and 19 are all protected by the work product doctrine, and that Document Nos. 1, 3 and 19 are further protected by the attorney-client privilege. The Court finds that Document Nos. 6 and 14 are not protected, and therefore must be produced to Cologne.

---

[14] Even in the case Cologne cites, *Medical Waste Technologies L.L.C. v. Alexian Bros. Medical Center, Inc.*, No 97. C 3805, 1998 WL 387705 , at *1 (N.D. Ill. June 24, 1998), the court held that the waiver of privileged communications via the "at issue" doctrine normally occurs by the assertion of an "affirmative defense." In *Medical Waste,* the defendant raised a "new" affirmative defense, and the plaintiff requested privileged material concerning this "new" affirmative defense. In the case *sub judice*, there is no affirmative defense or "new" issue that has been injected into the case. While the "control group" that Trustmark assembled may have discussed the letter of intent, these conversations *per se* are not what is at issue here. Plaintiff is not affirmatively marshaling these communications to its advantage, and therefore the "at issue" waiver does not apply.

With respect to the work product doctrine, the initial inquiry is whether Trustmark can demonstrate that the documents were prepared because of possible litigation. After carefully reviewing the documents at issue, the Court finds that there are "objective facts establishing an identifiable resolve to litigate." *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992)(citation omitted).

Mr. Lester stated in his affidavit that, from the date of the September 3, 1999 letter, Trustmark anticipated litigation with Cologne over the existence of Cologne's obligation, as co-joint venturer, to assume an equal share of the risk when Trustmark purchased the IDI block from Hartford. (*See* Pl.'s Memo, Ex. A, Lester Aff. at ¶ 5.) Furthermore, according to Mr. Lester, after the September 3rd repudiation of the joint venture, Trustmark formed a "working group to evaluate, formulate and access Trustmark's ongoing strategy in light of the anticipated litigation with Cologne." (*Id.*) An *in camera* review of the documents corroborates Mr. Lester, and Trustmark's, assertion that the documents this Court finds to be protected by the work product doctrine were, indeed, prepared in anticipation of potential litigation with Cologne.

<u>Document No. 1</u> is an October 27, 1999 memorandum, authored by

Trustmark's independent contractor Mr. Kinback, and requested by

in-house counsel Mr. Lester, to evaluate Cologne's assertions

about the claims handling process concerning the IDI block, and to

discuss JHA's review of the Hartford claims.[15]  Not only was this

document specifically requested by Trustmark's in-house attorney,

it reveals client communications (from Trustmark's agent Mr.

Kinback) for the purpose of securing legal advice for Trustmark,

and, consequently, clearly represents attorney-client privileged

communications.   Additionally, it also contains Mr. Kinback's

mental   impressions,   conclusions,   and   opinions   concerning

anticipated litigation with Cologne.   As explained *infra*, work

product protection may extend to documents prepared by clients, or

agents of clients, and not just documents prepared by an attorney.

*See Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195

F.R.D. 610, 615 (N.D. Ill. 2000)("Under Rule 26 . . . materials

prepared in anticipation of litigation by any representative of

the client are protected, regardless of whether the representative

is  acting  for  the  lawyer.  .  .  Thus,  whether  a  document  is

---

[15] According to Cologne, JHA is a third party consultant that
performed a claims audit for Trustmark and reviewed the Hartford
block.

protected depends on the motivation behind its preparation, rather than on the person who prepares it.").

Finally, although Cologne contends that Document No. 1 contains a business-related analysis of insurance claims, and therefore is not protected communications, the Court finds that there are, in fact, references to Cologne, and its attempt to remove itself from the Hartford risk. While there might be some general business analysis contained in this memorandum, the Court, nonetheless, finds that it is protected, because the document primarily concerns facts and strategies for Trustmark's continuing negotiations with Cologne, in light of Cologne's repudiation of the "joint venture." "[W]here a document is prepared because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection merely because it is also created in order to assist with a business decision." *Caremark, supra*, 195 F.R.D. at 614. Hence, Document No. 1 is protected by both the attorney-client privilege and work product doctrine.[16]

Document No. 3. is a October 7, 1999 memorandum, requested by

---

[16] Employees Mark McKinlay and Frederick Schick, as well as Attorney Lester, received Document No. 1. Because Mr. McKinlay and Mr. Schick are "control group" employees, the attorney-client privilege is not waived.

Trustmark attorneys Mr. Lester and Mr. Gramm, authored by Trustmark employee Mark McKinlay, concerning the Hartford assumption and Cologne's decision to exit the partnership. Because this document primarily relays factual information and includes a chronology of key events – and does not concern or request legal advice *per se* – the Court finds that it is not protected by the attorney-client privilege. Nonetheless, the Court finds that it is protected by the work product doctrine, as it is a "tangible" document that was prepared because of anticipated litigation with Cologne. While it does not contain legal strategies or mental impressions, and therefore is not "opinion" work product, it remains ordinary work product that is, nevertheless, protected, unless there is a showing of "substantial need", which there is not in this case. The Court finds that, whatever facts are contained in this memorandum and chronology, could be obtained through traditional discovery avenues.

Document Nos. 4,5,7,8,11,12,13,and 15 are all protected by the work product doctrine. They all contain either meeting assignments or meeting notes (or both), and clearly reflect Trustmark's strategy in dealing with the IDI block and Cologne's exit from the partnership. While non-control group employees Bill Blohm and Steve Schattner received all of these documents (except

doc. no. 5), this fact, as discussed *infra*, does not waive work product protection. *See, e.g., Wsol, supra*, 1999 WL 1129100, at *6 ("Disclosure of materials protected by the work product doctrine to a third party does not automatically waive the protection. For waiver, the disclosure must be to an adversary.") While Mr. Blohm and Mr. Schatter are not "control group" employees, as understood in Illinois, they are, nonetheless, employees of Trustmark who participated in the meetings concerning the Hartford block and Cologne's repudiation, and certainly not adversaries of Trustmark. Thus, the work product privilege applies, and is not waived.[17]

Document No. 6 is a September 8-9, 1999 memorandum titled "Individual Disability Claims, *Update and Action Plan*", authored by Trustmark employees Mr. McKinlay and Mr. Plazony, and requested by attorneys Mr. Lester and Mr Gramm. Trustmark only contends that this document is protected by the attorney-client privilege – not the work product doctrine. After a review of this document, the Court finds that, although it was requested by in-house

---

[17] The Court does not analyze whether any of these documents involve privileged attorney-client communications, as all of these documents (except Doc. No. 5, which was only sent to the file) went to non-control group employees, Mr. Blohm and Mr. Schattner, and therefore any attorney-client privilege would be waived.

counsel, it does not concern legal advice, or reveal facts for securing legal advice concerning Cologne, and thus is not attorney-client privileged. Rather, Document No. 6 concerns, as the title accurately depicts, a factual update and strategic action plan for the Hartford block individual disability claims. Cologne is not even mentioned in the document.[18] Accordingly, Document No. 6 is not protected and must be produced to Cologne.

Document No. 14 is a November 2, 1999 memorandum authored by attorney Mr. Lester to Trustmark employees, including non-control group employees Mr. Blohm and Mr. Schattner, and therefore any attorney-client privilege is waived. Additionally, the Court finds that this document is not protected by the work product doctrine, because it does not concern Cologne, or anticipated litigation with Cologne, and therefore fails the threshold inquiry of the work product doctrine. Instead, this document describes legal language for dealing with an objection by one of Trustmark's reinsurers, Lincoln National, to the settlement of claims. Trustmark fails to explain how communications concerning its

---

[18] Arguably, this document might have been protected under the work product doctrine, as it contains an "action plan." However, since Trustmark did not assert the work product privilege, the Court need not address whether Document No. 6 would have been shielded from discovery by the work product doctrine.

reinsurer Lincoln National relate to possible litigation with Cologne. Accordingly, this document is not privileged and must be produced to Cologne.

Document No. 19 are handwritten notes, dated September 7, 1999, by Trustmark's attorney, Mr. Lester, concerning his communications with Trustmark employees about Hartford Life and Cologne's repudiation. These notes were placed in a file, and non-control group employees did not receive them. After a review of this document, the Court concludes that this document is clearly protected by the attorney-client privilege and the work product doctrine. *See Sanner v. Board of Trade of City of Chicago*, 181 F.R.D. 374 (N.D. Ill. 1998)(finding that general counsel's meeting notes constituted protected work product).

## CONCLUSION

The Court, having carefully considered the matter, and for the reasons set forth above, finds that Documents Nos. 1,3,4,5,7,8,11,12,13,15 and 19 are privileged, and that Document Nos. 6 and 14 are not privileged, and consequently, must be turned over to Cologne. Therefore, the Court grants in part and denies in part Defendant's Motion. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion To Compel Production of Documents by Plaintiff be, and the same hereby is, **granted in part and denied in part.**

Dated: December 19, 2000          ENTER:

ARLANDER KEYS
United States Magistrate Judge