Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1926 | **DATE** | October 15, 2001 |
| **CASE TITLE** | *Trustmark Insurance Co. v. General Cologne Life Re of America* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Defendant General Cologne Life Reinsurance of America's Motion for Summary Judgment [30-1] is GRANTED as to Counts I-IV and DENIED as to Count V and Trustmark Insurance Company's Motion for Leave to Amend [22-1] is DENIED. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | 2 | | |
| | Notified counsel by telephone. | | OCT 2 2 2001 | | |
| | Docketing to mail notices. | | date docketed | | 36 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| RTS | courtroom deputy's initials | FOR DOCKETING 01 OCT 19 AM 9: 15 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTMARK INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Blanche M. Manning |
| | ) | |
| v. | ) | 00 C 1926 |
| | ) | **DOCKETED** |
| GENERAL COLOGNE LIFE RE | ) | |
| OF AMERICA, | ) | OCT 2 2 2001 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Trustmark Insurance Company ("Trustmark") brought the instant action seeking: (1) a declaratory judgment that Defendant General Cologne Life Reinsurance of America ("Cologne") is obligated under an alleged joint venture agreement that it made with Trustmark to reinsure a block of individual disability insurance ("IDI") policies (Count I); (2) specific performance under the alleged agreement (Count II); (3) damages for breach of contract (Count III); (4) damages for breach of fiduciary duty (Count IV); and (5) damages for promissory estoppel (Count V). The instant matter comes before the Court on: (1) Cologne's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56; and (2) Trustmark's Motion for Leave to Amend Its Original Complaint, pursuant to Federal Rule of Civil Procedure 15. For the reasons that follow, Cologne's Motion for Summary Judgment is GRANTED as to Counts I-IV and DENIED as to Count V, and Trustmark's Motion for Leave to Amend is DENIED.

# BACKGROUND [1]

Cologne is an insurance company that specializes in reinsuring blocks of life and health insurance policies. A reinsurance agreement is an agreement whereby a reinsurer agrees to indemnify an insurance company for payments owed by the insurance company on a block of defined insurance policies which the insurance company has underwritten. In exchange for indemnifying the insurance company, the reinsurer receives a portion of the premiums paid on the policies.

From 1998 to 1999, Trustmark and Cologne investigated the possibility of reinsuring various blocks of IDI policies. IDI policies insure employees from the risk that they might become injured or sick and not be able to continue with their employment. If an employee becomes disabled, the IDI policy provides the employee with income while the employee is unable to work.

In researching the potential purchase of IDI blocks, Cologne and Trustmark did not codify their intentions in a single document. The litigants dispute whether there was an agreement to form a joint venture for the purpose of reinsuring IDI blocks. It is, however, undisputed that neither Trustmark nor Cologne could force the other party to enter into a proposed reinsurance

---

[1] The facts in the Background section are derived from the parties' Local Rule 56.1 statements and other pleadings. The facts in Defendant's Local Rule 56.1(A)(3) statement that Plaintiff did not controvert in its Local Rule 56.1(b)(3)(A) statement are deemed admitted for purposes of this motion. Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992). Likewise, the facts that Plaintiff provides in his Local Rule 56.1 statement and that Defendant did not controvert are also deemed admitted. Id. The facts that Plaintiff objected to but did not deny are deemed admitted. McGuire v. United Parcel Serv., 152 F.3d 673, 679 (7th Cir. 1998). Lastly, responses that did not cite to "specific references to the affidavits, parts of the record, and other supporting materials relied upon," as required under Local Rule 56.1(b)(3)(A), are subject to the court's discretion as to their admission. Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997).

agreement without the consent of the other or compel the other party to use its personnel or resources to evaluate potential IDI blocks. The parties, however, disagree over whether each party was obligated to offer the other party the opportunity to participate in all IDI blocks which were presented to them.

During the course of investigating various IDI blocks, Trustmark, Cologne, and John Hewitt & Associates ("JHA"), a subsidiary of Cologne, performed due diligence on a block of 7,000 IDI policies underwritten by Hartford Life Insurance Company ("Hartford") ("the Hartford Block"). On October 28, 1998, after conducting due diligence on the Hartford Block, Trustmark signed a Letter of Intent with Hartford to acquire the IDI block ("the Letter of Intent"). Cologne, however, did not sign and was not mentioned in the Letter of Intent.

Trustmark contends that it only executed the Letter of Intent after Cologne reviewed the Letter of Intent and agreed to share in the risk of reinsuring the Hartford Block. Without Cologne's approval, Trustmark alleges that it would never have entered into the Letter of Intent. Cologne, on the other hand, denies that it agreed to participate in reinsuring the Hartford Block.

The Letter of Intent stated that "time is of the essence" and that the Final Purchase Agreement for the Hartford Block ("the Final Purchase Agreement") would be executed no later than December 1, 1998, "unless a later date is mutually agreed upon." The Final Purchase Agreement, however, was not signed until December 28, 1999. Like the Letter of Intent, Cologne did not sign nor was mentioned in the Final Purchase Agreement.

Prior to the execution of the Final Purchase Agreement, on September 3, 1999, Cologne informed Trustmark that it was no longer interested in sharing in the risk on the Hartford Block. Moreover, before the Final Purchase Agreement, by April 1999, Trustmark was projecting

3

significant losses on the reinsurance of the Hartford Block.

Although Cologne had disavowed any interest in reinsuring the Hartford Block and Trustmark was facing significant losses, Trustmark contends that it was bound to enter into the Final Purchase Agreement by the Letter of Intent. Cologne, on the other hand, contends that by December 1999 Trustmark was no longer bound by the Letter of Intent. Moreover, Cologne asserts that the Final Purchase Agreement contained materially different terms from the Letter of Intent. Trustmark contests this assertion, and contends that any differences in the terms were slight and at most constitute a minor variance from the terms in the Letter of Intent.

After Cologne refused to accept any liability on the Hartford Block, Trustmark brought the instant action. On April 28, 2000, this Court set June 30, 2000, as the deadline for filing amended pleadings without a showing of good cause. The scheduling order also set March 30, 2001, as the deadline for each party to depose the other side's experts and April 27, 2001, as the deadline for deposing rebuttal experts. The case was set for trial on October 15, 2001, but this date was struck, pending the Court's ruling on Cologne's Motion for Summary Judgment.

After substantial discovery, on April 12, 2001, pursuant to this Court's Standing Order, Cologne informed Trustmark that it would seek summary judgment on the grounds set forth in the instant motion. Shortly thereafter, on May 8, 2001, before Cologne filed its Motion for Summary Judgment, Trustmark filed its Motion for Leave to Amend its Original Complaint to add a sixth count of equitable estoppel. The sixth count of equitable estoppel states that Cologne, directly and through its subsidiary and agent, JHA, failed to perform adequate due diligence and consequently misrepresented the value of the Hartford Block. Trustmark maintains that it was unable to uncover a sufficient basis for the equitable estoppel count until after deposing the

actuary experts.

Currently before this Court are Cologne's Motion for Summary Judgment and Trustmark's Motion for Leave to Amend Its Original Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir.1994). A genuine issue of material fact is one that might affect the outcome of the lawsuit, and factual disputes that are irrelevant will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court must construe the alleged facts in a light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Dale v. Chicago Tribune Co., 797 F.2d 458, 460 (7th Cir. 1986).

The moving party carries the initial burden of establishing that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tenenbaum Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir.1990). The nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not merely rest upon the allegations or denials in its pleading, but instead, must "set forth specific facts showing that there is a genuine

issue for trial." See Anderson, 477 U.S. at 248. If the evidence presented is "merely colorable" or is not "significantly probative," summary judgment may be granted. Id. at 250-51 (citations omitted). The court considers the record as a whole, and draws all reasonable inferences in the light most favorable to the nonmoving party. Regner v. City of Chicago, 789 F.2d 534, 536 (7th Cir.1986).

## ANALYSIS

Cologne contends that summary judgment is appropriate because: (I) the parties never entered into an agreement to form a joint venture for the purpose of reinsuring the Hartford Block; (II) the alleged joint venture and claim for promissory estoppel are unenforceable under the statute of frauds; and (III) Trustmark has failed to allege sufficient facts to prevail on its promissory estoppel claim. Additionally, Cologne contends that Trustmark's motion to amend its complaint is untimely, without good cause, and prejudicial to Cologne. The Court will discuss each of these four contentions in turn.

### I.     Formation of a Joint Venture Under Illinois Law

"Under Illinois law, a joint venture is an association of two or more persons to carry out a single enterprise for profit, and the rights and liabilities of its members are tested by the same legal principles which govern partnerships."[2] Overseas Dev. Disc Corp. v. Sangamo Constr. Co., 840 F.2d 1319, 1331 (7th Cir.1988). "The burden of proving a joint venture is on the person who claims such a relationship exists." Barton v. Evanston Hosp., 513 N.E.2d 65, 67 (Ill. App. Ct. 1987).

---

[2]     The parties contend and this Court agrees that Illinois law governs this action.

6

The existence of an express written agreement is just one of several factors courts consider when determining whether a joint venture exists. Herst v. Clark, 579 N.E.2d 990, 992 (Ill. App. Ct. 1991); Gruca v. Alpha Therapeutic Corp., 19 F. Supp. 2d 862, 872 (N.D. Ill.1998). The existence of a joint venture may be implied or established from the facts and circumstances showing that the parties in fact intended to enter into a joint venture. O'Brien v. Cacciatore, 591 N.E.2d 1384, 1389 (Ill. App. Ct. 1992). To determine the parties' intent to form a joint venture, the court must find each of the following factors:

> (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge by each joint venturer; (4) some degree of joint proprietorship or mutual right to exercise control over the enterprise; and (5) provision for the joint sharing of profits and losses.

Ambuul v. Swanson, 516 N.E.2d 427, 429 (Ill. App. Ct. 1987).

The failure to prove any of the above five elements results in a finding that no joint venture exists. O'Brien, 591 N.E.2d at 1389. Although the court may infer that the parties entered into a joint venture from the facts and circumstances, the party alleging the joint venture must allege sufficient facts for the court "to at least be able to infer each of the elements from the facts and conclusions alleged." Indus. Hard Chrome, Ltd. v Hetran, Inc., 90 F. Supp. 2d 952, 955 (N.D. Ill. 2000).

Here, Cologne contends that Trustmark has failed to show that a joint venture existed between Cologne and Trustmark with regard to the reinsurance of the Hartford Block. Specifically, Cologne argues that Trustmark has failed to show that a joint venture existed because neither Cologne nor Trustmark had the right to govern the conduct of the other.

7

"Possibly, the most important criterion of a joint venture is joint control and management of the property used in accomplishing its aims." Herst v. Chark, 579 N.E.2d 990, 992 (Ill. App. Ct. 1991). Therefore, courts must determine whether the parties exerted a "right to direct and govern the policy and the conduct of the other in connection with the joint venture." Barton v. Evanston Hosp., 513 N.E.2d 65, 67 (Ill. App. Ct. 1987). See also Secon Serv. Sys., Inc. v. St. Joseph Bank & Trust Co., 855 F.2d 406, 416 (7th Cir.1988). Finding a right to manage or control requires finding some right by the parties to direct and govern the conduct of each other in connection with the joint venture. Edward Hines Lumber Co. v. Vulcan Materials Co., 861 F.2d 155, 158 (7th Cir.1988). In addition, courts consider "whether the parties manage their own affairs separately, whether they appoint persons to management positions within the joint venture, whether they control the methods or policies used by each other, whether they exert or attempt to exert control over the work of the joint venture, and whether any right to control is one-sided rather than mutual." Quadro Enter., Inc. v. Avery Dennison Corp., 97 C 5402, 2000 WL 1029176, at *7 (N.D. Ill. July 26, 2000). See also O'Brien, 591 N.E.2d at 1388-89; Barton, 513 N.E.2d at 67-68; Clapp v. JMK.Skewer, Inc., 484 N.E.2d 918, 920-21 (Ill. App. Ct. 1985); O'Neil v. Continental Ill. Nat'l Bank & Trust Co., No. 84 C 9398, 1985 WL 2710, at *10-11 (N.D. Ill. Sept. 25, 1985); Palin Mfg. Co. v. Water Tech., Inc., 431 N.E.2d 1310, 1315 (Ill. App. Ct. 1982); Elec. Contractors, Inc. v. Goldberg & O'Brien Elec. Co., 331 N.E.2d 238, 242 (Ill. App. Ct. 1975).

In Quadro Enterprise, Inc., 2000 WL 1029176, at *7, in granting the defendant's motion for summary judgment as to breach of fiduciary duty, the court held that because the evidence failed to show that the parties "shared the requisite control, no joint venture exists as a matter of

law." The plaintiff in Quadro supplied a large corporation with printed address labels which it purchased from the defendant. Id. at *1. After the defendant began selling the labels directly to the customer, the plaintiff brought suit alleging that the defendant breached its fiduciary duty. Id. According to the plaintiff, the defendant owed the plaintiff a fiduciary duty because the parties formed a joint venture to sell the labels to the customer. Id. at *4.

The court noted that there was no evidence that either party had the right to direct the other's conduct in connection with the alleged joint venture. Id. at *7. Specifically, the court found that the defendant did not have the right to set prices, participate in the sales negotiations, or control the distribution of the product. Id. Moreover, the defendant was not mentioned in the sales contracts. Id. Consequently, "[b]ecause [the plaintiff] cannot prove that the parties shared the requisite joint control, no joint venture exists as a matter of law." Id.

In reaching its holding, the court in Quadro Enterprise relied on the Seventh Circuit's holding in Edward Hines Lumber Co., 861 F.2d at 158. In Edward Hines Lumber Co., the Seventh Circuit affirmed the trial court's finding that the plaintiff, an owner and operator of a wood treatment facility, and the defendant, a chemical supplier to the plaintiff, were not joint venturers. In reaching this conclusion, the court noted that "[the defendant] had no control of the work at the [plaintiff's] plant, no right to choose employees, direct their activities, or set prices; it had at most a limited veto power--if the product was not up to snuff . . . . [the plaintiff] could have shut the plant or revamped its operation in order to reduce emissions." Id.

Similarly, in O'Neil, 1985 WL 2710, at *10-11, the complaint alleged that the litigants entered into a joint venture to secure a "certificate of need" to operate a hospital. Granting summary judgment, the court held that the evidence failed to show joint control because except

for the defendant's right to direct the plaintiffs to continue their effort to secure the certificate for one year, the defendant could not control the method used or policy implemented by the plaintiffs in their efforts to secure the certificate. Id. at *11.

Likewise, in Plain Manufacturing Co., 431 N.E.2d at 1315, reversing the trial court's finding of a joint venture, the Illinois Appellate Court held that a joint marketing/sales effort by two companies to sell two products that each company produced to a single buyer was not a joint venture. The court found that there was no "evidence concerning the rights of the parties to govern the project, or the degree of communal or proprietary interest possessed by each." Id. Therefore, the court held that the venture was simply a joint sales effort "for the sake of convenience, without any exchange of obligations or duties," and thus, the evidence failed, as a matter of law, to establish the existence of a joint venture. Id.

Moreover, in Barton, 513 N.E.2d at 67-68, affirming the trial court's finding that a joint venture did not exist, the Illinois Appellate Court held that the plaintiff failed to properly plead the element of mutual control. The plaintiff, who died as a result of injuries sustained at the defendant hospital, attempted to hold the hospital vicariously liable under a theory that the hospital and the co-defendant doctor formed a joint venture to treat the plaintiff. Id. at 67. The court found that the complaint failed to allege how the hospital controlled the doctor and noted that the doctor's "ability to direct certain hospital personnel did not give the doctor the authority to control hospital policy or operation." Id. Therefore, the court held that the complaint did not properly allege a joint venture because "the mutuality of control contemplated by a [] joint venture is not present." Id. at 68.

Similarly, in Clapp, 484 N.E.2d at 920-21, affirming the trial court's dismissal of a claim

against an alleged joint venture, the Illinois Appellate Court held that the plaintiff failed to properly plead the element of control. The plaintiff, who was injured at a shopping mall, attempted to hold the owners of the mall vicariously liable under a theory that the owners entered into a joint venture with the tenant. Id. The court noted that although there was a "sense" of "community of interest" because the tenant and the owner relied on each other for their success, the court found that the complaint failed to allege "mutuality of control contemplated by a truly joint venture," in that the plaintiff failed to allege that the tenant had "the least bit of authority to influence the behavior of the [landlord]." Id. at 920.

Here, similar to the above authorities, this Court finds that Trustmark has failed to show joint control between Trustmark and Cologne. The undisputed facts show that neither Trustmark nor Cologne could: (1) force the other party to enter into potential IDI transactions unless the other party consented; or (2) compel the other to use its employees and resources to evaluate proposed IDI purchases. For example, during his deposition, Trustmark's Koloms was asked the following: "Cologne couldn't force Trustmark to do a deal that Trustmark didn't want to do?" (Koloms Dep. at 82.) Similarly, Koloms was asked "if Trustmark wanted to do a deal, a deal became available, you looked at it and Cologne looked at it, and Cologne didn't want to do it, Trustmark couldn't make Cologne do it?" (Id. at 175-76.) In response to both of these questions, Koloms answered "correct." (Id. at 82, 175-76.) Likewise, Trustmark's Bell testified that neither party could compel the other to enter into a transaction. (Bell Dep. at 140-41.) As for control over the other party's employees and resources, Bell testified that neither party had the right to insist that the other's employees perform a particular task. (Bell Dep. at 137-39.) Moreover, in evaluating the Hartford Block, although Cologne included certain assumptions in

11

its valuation model, there is no evidence that Trustmark could set policy or control Cologne's operations. Consequently, because neither Trustmark nor Cologne could force the other party to enter into a potential IDI transaction, compel the other to use its employees and resources with respect to the purchase of the Hartford Block, or control each other's operations or policies, this Court finds that Trustmark has failed to prove the required element of "mutual control."

In response to these uncontested facts, Trustmark contends, without citing any specific authority, that "[t]he relevant question is not whether the parties could force each other to pursue IDI transactions . . . but rather, what right of control the parties possessed in connection with the acquisition of the Hartford block." (Resp. at 9.) According to Trustmark, summary judgment is inappropriate because: (1) the pricing model used to valuate the Hartford Block included certain assumptions requested by Cologne; (2) Cologne reviewed and commented on drafts of the Letter of Intent; and (3) the parties divided control along functional lines with Cologne performing due diligence and Trustmark handling claims administration.

In support of these contentions, Trustmark cites Ambuul v. Swanson, 516 N.E.2d 427 (Ill. App. Ct. 1987) and Herst v. Chark, 579 N.E.2d 990 (Ill. App. Ct. 1991). These cases, however, are distinguishable from the instant case. For example, in Ambul, 516 N.E.2d at 429, two parties entered into a written agreement to purchase and rehabilitate a building. The written agreement provided for an allocation of profits between the two participants when the building was sold. Id. Appealing the trial court's decision that a joint venture existed, the defendant contended that a joint venture "did not exist since plaintiff had no right to control the management of the building." Id. at 430. Rejecting this argument, the Illinois Appellate Court held that "[t]he fact that plaintiff did not participate in the day-to-day management of the enterprise does not . . .

12

preclude the existence of a joint venture." Id. Looking at the facts and circumstances of the enterprise, the court found that the parties agreed that the defendant would contribute labor and expertise in building rehabilitation and the plaintiff would manage the day-to-day operation of the enterprise. Id. However, although the defendant did not specifically participate in the management of the building, the plaintiff consulted with and obtained the defendant's approval on major management decisions. Id. Therefore, the court found that the "facts and circumstances" supported the plaintiff's contention that the parties agreed to joint control and management. Id.

Here, in contrast to Ambul, there is no evidence that the parties sought approval for work that they performed regarding the potential purchase of the Hartford Block. Moreover, unlike Ambul, where the parties consulted with each other after they entered into a written agreement, Cologne's alleged act of reviewing and commenting on drafts of the Letter of Intent occurred before Trustmark entered into the Final Purchase Agreement. Under Illinois law, parties may conduct preliminary consultations "without fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics." Empro Mfg. v. Ball-Co. Mfg., Inc., 870 F.2d 423, 426 (7th Cir. 1989). Consequently, this Court finds that Trustmark's reliance on Ambul is misplaced.

In Herst, 579 N.E.2d at 992, the parties were involved in an enterprise to perform debt collection. Appealing the trial court's decision that a joint venture existed, the defendant contended that the parties lacked the right of joint control. Id. Because there was no written agreement specifically creating a joint venture, the appellate court looked to the facts and circumstances surrounding the enterprise. Id. at 993. The court found that the parties entered

13

into a "Memo and Understanding," which specified that the parties "were to divide the business along two functional lines," with one party working on marketing and the other performing the actual collection work. Id. Therefore, the court found that "[t]he fact that [the plaintiff] did not participate in the management of the collection portion of the enterprise does not . . . preclude the existence of a joint venture." Id.

Here, unlike Herst, Trustmark has failed to present any evidence that it had a right to control or govern JHA's work on the valuation of the Hartford Block or that the parties agreed to divide the work along functional lines. The fact that JHA's valuation model included certain assumptions requested by Trustmark is consistent with a joint investigation of a potential investment opportunity and not evidence of the right of joint control. Moreover, the fact that Trustmark participated in the evaluation of the Hartford Block directly contradicts Trustmark's contention that the parties had divided the work along functional lines with Cologne handling due diligence and Trustmark performing claims administration.

Consequently, because Trustmark has failed to present sufficient evidence that Trustmark and Cologne shared the requisite joint control, no joint venture exists as a matter of law, and therefore, summary judgment is appropriate as to Counts I-IV of Trustmark's Complaint because each of these counts are based on the existence of an alleged joint venture. See Quadro Enter., Inc., 2000 WL 1029176, at *7 (granting summary judgment where the evidence failed to establish the plaintiff's right to control the defendant's conduct); O'Neil, 1985 WL 2710, *10-11 (granting summary judgment where plaintiffs could not establish right to direct and govern the

project or sharing of profits and losses).[3]

## II.     Statute of Frauds

In addition to contending that no joint venture existed, Cologne asserts that the alleged joint venture and Trustmark's claim of promissory estoppel are barred by the statute of frauds.[4] Under Illinois law, contracts that cannot be fully performed within one year from their making must be in writing and signed by the party charged with breaching the contract. 740 ILCS 80/1. See also McInerney v. Charter Golf, Inc., 680 N.E.2d 1347, 1351 (Ill. 1997). The purpose of the statute of frauds is to prohibit fraud by barring actions on alleged agreements with nothing more than "loose verbal statements." Pillay v. G.C. Serv. Ltd., 1998 WL 242135, at *2 (N.D. Ill. May 6, 1998) (citing, McInerney, 680 N.E.2d at 1351).

The parties contest whether: (A) a writing exists; (B) the alleged contract can be fully performed within one year; (C) Cologne waived the statute; and (D) Trustmark has substantially performed its obligations under the alleged contract, which takes the contract outside the scope of the statute.

## A.     Existence of a Writing Under the Statute of Frauds

Two or more writings may satisfy the writing requirement of the statute as long as "all the

---

[3]     Cologne has also put forth other contentions as to why Trustmark has failed to show that a joint venture existed with regard to the reinsurance of the Hartford Block. Because the Court has found that Trustmark has failed to show the required element of mutual control, the Court will not address these additional arguments.

[4]     Although the Court has already granted summary judgment on the joint venture issue, because the promissory estoppel claim remains, the Court will discuss the applicability of the statute of frauds to Trustmark's promissory estoppel claim. If the statute of frauds applies to this action, then Trustmark is precluded from asserting promissory estoppel. See Fischer v. First Chicago Capital Markets, Inc., 195 F.3d 279, 284 (7th Cir. 1999).

essential terms are stated with reasonable certainty and the documents are connected in such a way that they may be said to relate to the same contract." Pillay, 1998 WL 242135, at *2 . All of the documents need not be signed, but the signed writing must refer expressly to the unsigned writings or the "several writings must be so connected, either physically or otherwise, that it may be determined by internal evidence that they relate to the same contract." Sims v. Broughton, 589 N.E.2d 1056, 1059-60 (Ill. App. Ct. 1992). In meeting the writing requirement, Illinois law prohibits courts from considering oral testimony, to do otherwise would "sap the statute of frauds of most of its force." Cohabaco Cigar Co. v. United States Tobacco Co., 1999 WL 988805, at *4 (N.D. Ill. Oct. 22, 1999).

Here, Trustmark asserts that the following documents satisfy the statute's writing requirement: (1) the Letter of Intent between Trustmark and Hartford; (2) a letter by Cologne's Perkins to Lincoln National ("Lincoln"), which was not a party to the Hartford Block reinsurance agreement, stating that Cologne and Trustmark were "successful partners"; and (3) the valuation of the Hartford Block prepared by JHA. (Trustmark's Resp. at 21.)

After a careful review of these documents, the Court finds that they do not state the essential terms of the alleged agreement with reasonable certainty and are not connected to each other so that the Court could find that they relate to the alleged contract. For example, the Letter of Intent between Hartford and Trustmark does not mention Cologne or the alleged joint venture. Likewise, the letter to Lincoln, which is not even a party to this action or involved in the Hartford Block transaction, pertains to an unrelated agreement to reinsure a block of insurance policies from Lincoln. Moreover, as explained below, the use of the term partners in the Lincoln letter was not meant to legally bind the parties. Lastly, the valuation letter by JHA does not contain

16

any reference to the other documents and does not mention the alleged joint venture. Consequently, this Court finds that these documents do not satisfy the statute's writing requirement.

## B.    Performance of the Contract within One Year

In creating the statute's one year requirement, the legislature recognized that evidence becomes stale and memories fade with the passage of time. McInerney, 680 N.E.2d at 1351. The statute was designed to protect the "fact finder from charlatans, perjurers and the problems of proof accompanying oral contracts." Id. Therefore, oral contracts are barred by the statute unless the contract is "capable of being fully performed within one year and not simply terminated by some contingency such as death or bankruptcy." Cohn v. Checker Motors Corp., 599 N.E.2d 1112, 1116 (Ill. App. Ct. 1992).

In McInerney, 680 N.E.2d at 1351, the plaintiff contended that a contract for lifetime employment was excluded from the operation of the statute because the employee could die or the company could go into bankruptcy within one year, and thus, the contract was capable of being performed within one year. Id. Rejecting this argument and affirming summary judgment in favor of the defendant, the Illinois Supreme Court held that a contract for lifetime employment "[i]nherently [] anticipates a relationship of long duration – certainly longer than one year." Id. at 1352. To hold otherwise, the court noted, would "eviscerate the policy underlying the statute of frauds and would invite confusion, uncertainty and outright fraud." Id.

Here, the alleged joint venture/agreement was to reinsure 7,000 IDI policies. By their very nature, IDI policies are long term contracts. IDI policies insure employees from the risk that they might become injured or sick and not be able to continue with their employment. If an

employee becomes disabled, the IDI policy provides the insured with income while the employee is disabled. While it is certainly possible that all 7,000 insureds could die or cancel their policies within one year, based on the above authorities, this Court finds that such a tenuous contention is not sufficient to take the alleged agreement out of the statute of frauds. Consequently, this Court finds that the statute of frauds applies to the alleged joint venture agreement this action.

### C.    Waiver of the Statute of Frauds

Under Illinois law, a party waives its right to assert the statute of frauds by acknowledging the existence of the disputed agreement and its subject matter. R.J.N. Corp. v. Connelly Food Products, Inc., 529 N.E.2d 1184, 1189 (Ill. App. Ct. 1988); Dallis v. Don Cunningham & Assoc., 1991 WL 278312, at *3 (N.D. Ill. Dec. 18, 1991). In both R.J.N. Corp. and Dallis, the courts held that to waive the statute of frauds, the party seeking waiver must point to specific testimony by the charged party explicitly admitting the existence and substance of the alleged agreement. Likewise, in Derby Medows Utility Co. v. Inter-Continental Real Estate, 559 N.E.2d 986, 991-92 (Ill. App. Ct. 1990), the defendant acknowledged in his deposition that he had a conversation with the plaintiff where the parties shook hands and stated that "[w]e have a deal." Rejecting the waiver argument, the court held that this conversation "was not an unequivocal statement regarding the existence of a contract." Id.

Here, Trustmark contends that Cologne has waived its right to assert the statute by acknowledging the existence of the alleged joint agreement. Specifically, Trustmark asserts that: (1) Cologne's Perkins acknowledged the joint efforts of the parties to acquire the Hartford Block; (2) Cologne admitted that it approved the purchase price and the Letter of Intent between Trustmark and Hartford with the intent to take 50% of the risk on the Hartford Block; and (3)

Cologne agreed that Trustmark would handle the policy and claim administration.

Reviewing the evidence cited by Trustmark, this Court finds that Trustmark has failed to point to any specific evidence that Cologne explicitly admitted the existence and substance of the alleged joint venture. For example, Cologne's alleged act of reviewing and commenting on drafts of the Letter of Intent and working on the valuation of the Hartford Block is not an explicit admission of the alleged joint venture agreement. Instead, this is evidence of a joint investigation and preliminary consultations, and under Illinois law, parties may conduct preliminary consultations "without fear that by reaching a preliminary understanding they have bargained away their privilege to disagree on the specifics." Empro Mfg., 870 F.2d at 426. Moreover, as Trustmark admitted, the letters referring to Trustmark and Cologne as "partners" were not meant to express an intention that the parties had legally bound themselves as partners. (Bell Dep. at 200-01.) Consequently, this Court finds that Cologne has not waived the statute of frauds.

**D.     The Partial Performance Exception to the Statute of Frauds**

In addition to asserting waiver, Trustmark contends that the partial performance exception bars Cologne from asserting the statute of frauds. Under Illinois law, a party may not assert the statute of frauds where there has been sufficient partial performance of a contract in reliance upon that party's promises or conduct. Genin, Trudeau & Co., Ltd. v. Integra Dev. Int'l, 845 F. Supp. 611, 619 (N.D. Ill. 1994). To take a contract out of the statute of frauds under the partial performance exception, the party seeking enforcement of the alleged contract must show that the acts alleged as partial performance were "attributable exclusively to the contract." Id. See also Aviation Resource Partners, Inc. v. BAA USA, Inc., 1997 WL 610326, at * 5 (N.D. Ill. Sept. 29, 1997) (the party asserting the partial performance exception must show that the

19

performance was "clearly more consistent with the existence of the agreement than with some other arrangement"). "Mere acts of preparation," however, do not constitute partial performance. Genin, Trudeau & Co., Ltd., 845 F. Supp. at 619. The reasoning underlying the partial performance exception is that part performance by one party "is pretty solid evidence that there really was a contract – for why else would the party have performed unilaterally . . . . if a party performs first there is some basis for inferring that he had a contract." Monetti, S.P.A. v. Anchor Hocking Corp., 931 F.2d 1178, 1183 (7th Cir. 1991).

Here, Trustmark contends that the parties entered into a joint venture for the purpose of reinsuring blocks of IDI policies. According to Trustmark, it substantially performed its obligations under the agreement by assisting Cologne in the valuation of the Hartford Block, executing the Letter of Intent, and taking over the policy and claim administration on the Hartford Block. Trustmark alleges that it only performed these actions based on its understanding that Cologne was its partner in the joint venture. This belief, according to Trustmark, was a reasonable given Cologne's alleged oral agreement to participate in the reinsurance agreement and Cologne's review of the drafts of the Letter of Intent and due diligence on the Hartford Block.

Cologne, on the other hand, contends that the above actions by Trustmark were not based on an alleged joint venture agreement. Instead, Cologne asserts that Trustmark undertook these actions, based on its own desire to reinsure the Hartford block for itself.

Reviewing the evidence in favor of Trustmark, as this Court is required to do, the Court finds that Trustmark has raised a genuine issue of material fact as to whether Trustmark entered into the Letter of Intent in reliance upon Cologne's alleged promises and conduct. As explained

20

below, Cologne's Perkins admitted at his deposition that at the time the Letter of Intent was signed Cologne was planing on reinsuring 50% of the Hartford Block and that he understood that Trustmark believed this to be true. Trustmark's act of entering into the Letter of Intent can only be attributable to the alleged joint venture agreement or Trustmark's desire to enter into a reinsurance agreement for itself. Consequently, because this is an issue of material fact, this Court finds that the doctrine of partial performance precludes Cologne from asserting the statute of frauds at this stage of the litigation.[5]

## III.    Promissory Estoppel

Because this Court finds that Trustmark's partial performance bars Cologne from asserting the statute of frauds at this point in the case, the Court will discuss the validity of Trustmark's fifth and final claim in its Original Complaint – promissory estoppel (Count V). To prevail on its promissory estoppel claim, Trustmark must show: (1) an "unambiguous promise" by Cologne to Trustmark to reinsure the Hartford Block; (2) Trustmark relied on the promise in entering into the reinsurance agreement with Hartford; (3) Trustmark's reliance was "expected and foreseeable" by Cologne; and (4) Trustmark actually relied on the promise to their detriment. Cohabaco Cigar Co. v. United States Tobacco Co., 1999 WL 988805, at *10 (N.D. Ill. Oct. 22, 1999); Hall v. Nat'l Collegiate Athletic Assoc., 985 F. Supp. 782, 796 (N.D. Ill. 1997).

In determining whether a promise is "unambiguous," the party seeking to enforce the promise must specifically identify the "source of [the] promise." Hall, 985 F. Supp. at 796. The failure to point to the source of the alleged promise results in a finding that the promise is

---

[5]    The Court notes that if the evidence at trial shows Trustmark entered into the Letter of Intent with the intention of reinsuring 100% of the block itself, then the partial performance exception will not preclude the operation of the statute of frauds.

ambiguous. Id. Moreover, a promise by a party "simply to invest is ambiguous and cannot be reasonably relied upon if the promisee is unaware of the terms of the investment." Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust, 846 F. Supp. 701, 712 (N.D. Ill. 1994).

Here, Cologne contends that the evidence fails to show that Cologne made an unambiguous promise or that Trustmark actually and reasonably relied upon the alleged promise to its detriment. In response, Trustmark contends that: (1) "Cologne by its words and deeds unequivocally communicated to Trustmark its commitment to share in 50% of the risk on the Hartford Block"; and (2) Trustmark entered into the Letter of Intent only because Cologne promised to share in the risk, and the fact that Cologne pulled out of the deal before the Final Purchase Agreement was irrelevant because Trustmark was required to finalize the agreement by the Letter of Intent. (Trustmark's Resp. at 24-25.)

After reviewing the deposition of Cologne's Perkins, one of the Cologne personnel who worked closely with Trustmark in the investigation of the Hartford Block, this Court finds that Trustmark has set forth sufficient facts to show that Cologne unambiguously promised to share in a specific percentage of the risk on the Hartford Block. Perkins testified that at the time Cologne received a copy of the signed Letter of Intent that "it was [his] expectation that Cologne would reinsure 50 percent of the [Hartford Block]," and he understood that "Trustmark believed that Cologne was going to accept 50 percent of the risk." (Perkins Dep. at 386-88.) Consequently, this Court finds that a question of fact exists as to whether Trustmark reasonably relied upon Cologne's promise to reinsure 50% of the Hartford Block when it entered into the Letter of Intent.

As to whether Cologne relied on this promise to its detriment, hinges upon whether the

22

Letter of Intent bound Trustmark to enter into the Final Purchase Agreement. Cologne contends that on September 3, 1999, when it notified Trustmark that it was no longer interested in reinsuring the Hartford Block, Trustmark was not "committed" to enter into the Final Purchase Agreement. Therefore, according to Cologne, Trustmark entered into the Final Purchase Agreement on its own accord and not under the belief that Cologne would reinsure the Hartford Block.

It is undisputed that the Letter of Intent stated that it was binding on the parties "in accordance with its terms." Cologne, however, contends that the Final Purchase Agreement contained material differences from the Letter of Intent, and therefore, Trustmark was no longer bound by the Letter of Intent. Thus, according to Cologne, Trustmark entered into the Final Purchase Agreement on its own accord and not based on any promise by Cologne. Trustmark, contests this assertion, and contends that any differences in the terms were slight and at most constitute a minor variance from the terms in the Letter of Intent, and therefore, it was required by the Letter of Intent to enter into the Final Purchase Agreement. Because both parties have cited facts to support their assertions, this Court finds that a question of material fact exists as to whether Trustmark was bound by the Letter of Intent. Thus, a genuine issue of material fact exists as to whether Trustmark detrimentally relied on Cologne's promise. Consequently, the Court denies the motion for summary judgment as to the promissory estoppel claim (Count V).

## IV.    Motion to Amend the Original Complaint

In addition to the five counts in its Original Complaint, Trustmark has moved this Court to permit it to file an Amended Complaint adding a sixth count of equitable estoppel. The equitable estoppel count states that Cologne, directly and through its subsidiary and agent, JHA,

23

failed to perform adequate due diligence and consequently misrepresented the value of the Hartford Block. Trustmark maintains that it was unable to uncover a sufficient basis for the equitable estoppel count until after deposing Trustmark's expert Michael Koopersmith on April 19, 2001 and Cologne's expert William Bossi on April 26, 2001 ("the April 2001 Depositions").

Federal Rules of Civil Procedure 16(b) and 15(a) govern motions to amend a complaint. To amend a pleading after the passage of the deadline in the trial court's scheduling order, Rule 16(b) requires the moving party to show "good cause." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992); Tschantz v. McCann, 160 F.R.D. 568, 571 (N.D. Ind. 1995). In determining "good cause," courts look to whether the moving party exercised "due diligence" in failing to meet the court's deadline. Tschantz, 160 F.R.D. at 571.

Cologne contends that Trustmark has failed to show good cause to amend its complaint after the June 30, 2000 deadline set by this Court's scheduling order. According to Cologne, by 1999 Trustmark employees were skeptical of the quality of work performed by JHA and could have stated the claim for equitable estoppel prior to this Court's deadline. Trustmark acknowledges that it "harbored suspicions" about the quality of JHA's work, but insists that sufficient facts supporting the claim that JHA overvalued the Hartford block were not available until the two parties took up the issue of due diligence in earnest from September 2000 through April 2001. Therefore, Trustmark contends that because it did not have a sufficient factual basis for its equitable estoppel claim until after the April 2001 Depositions, there is good cause for requesting leave to amend its original complaint in May 2001.

After a careful review of the relevant factual record, this Court finds that Trustmark has failed to show good cause for its failure to amend its complaint until May 17, 2001, over nine

months after this Court's deadline to amended pleadings. A review of the deposition of Daniel Winslow, an actuary for Trustmark, reveals that by the end of 1999, Trustmark had numerous concerns over the quality of the valuation work being conducted by JHA. This testimony contradicts Trustmark's current contention that it was not aware of the inadequate valuation until the completion of the April 2001 Depositions. Moreover, because the April 2001 depositions were expert depositions that were based upon facts that were available to Trustmark, this Court cannot accept the assertion that the facts for the equitable estoppel claim were not available until after the April 2001 Depositions. Consequently, this Court finds that Trustmark has failed to meet Rule 16(b)'s "good cause" requirement.

Rule 15(a) provides that "leave shall be freely given when justice so requires." A complaint serves to put defendants on notice, and therefore, should be "freely amended or constructively amended as the case develops, as long as amendments do not unfairly surprise or prejudice the defendant." Umar v. Johnson, 173 F.R.D. 494, 503 (N.D. Ill. 1997). An amendment may be denied if there is "undue delay, bad faith or dilatory motive on the part of the movant, . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). See also Villa v. City of Chicago, 924 F.2d 629, 632 (7th Cir. 1991). Courts are particularly inclined to deny motions to amend where the plaintiff has waited until after discovery has closed and the defendant has moved for summary judgment. See Sanders v. Venture Stores, Inc., 56 F.3d 771, 774-75 (7th Cir. 1995) (citing cases). The reasoning underlying the denial of motions to amend after discovery has ended and summary judgement is filed was expressed by the court in Johnson v. Methodist Medical Center of Illinois, 10 F.3d 1300, 1304 (7th Cir. 1993), which noted that there

must be a point at which the plaintiff makes a commitment to its theory of the case and should not be allowed to hold back claims not pled in its original complaint until faced with summary judgment.

Here, Cologne contends that the Court should not permit Trustmark to amend its complaint at this late stage because: (1) Trustmark unduly delayed bringing the equitable estoppel claim until it was needed to avoid Cologne's summary judgment argument; and (2) the amendment would be prejudicial because Cologne will be required to take new depositions on the issues of due diligence and misrepresentation, prolonging litigation at great expense. Trustmark, on the other hand, contends that: (1) it did not unduly delay bringing the equitable estoppel claim because it did not have a sufficient factual basis for this claim until after the April 2001 Depositions; and (2) permitting the amendment would not require new discovery because the facts underlying the equitable estoppel claim are similar to the existing promissory estoppel claim for which discovery is completed.

As discussed above, this Court finds that Trustmark was aware or should have been aware of the facts underlying its equitable estoppel claim in 1999, and therefore, this Court holds that Trustmark unduly delayed bringing its equitable estoppel claim. Moreover, the concern cited by the Seventh Circuit in <u>Johnson</u> is present here in that Trustmark did not move to amend its complaint until it was notified that Cologne was planning to file a motion for summary judgment.

As for prejudice to Cologne, the Court finds that some discovery has been taken on the issue of the adequacy of Cologne's due diligence. However, equitable estoppel requires a showing of misrepresentation which is not an element of promissory estoppel. Trustmark's contention that Cologne would not be prejudiced "ignores that fact that any experienced litigator

26

is well aware that a deposition cannot be adequately conducted or defended without a solid understanding of the theory of the case." <u>Hoopla Sports and Entertainment, Inc. v. Nike, Inc.</u>, 1998 WL 60776, at *4 (N.D. Ill. Feb. 5, 1998). Therefore, this Court finds that Cologne may very well need to conduct additional discovery on the misrepresentation issue.

Consequently, this Court denies the motion to amend because it was unduly delayed and would prejudice Cologne.

## CONCLUSION

For the foregoing reasons, Defendant General Cologne Life Reinsurance of America's

Motion for Summary Judgment [30-1] is GRANTED as to Counts I-IV and DENIED as to

Count V and Trustmark Insurance Company's Motion for Leave to Amend [22-1] is DENIED.

ENTER:

BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: _10-15-01_