# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1926 | **DATE** | July 11, 2003 |
| **CASE TITLE** | *Trustmark Insurance Co. v. General Cologne Life Re of America* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, this Court DENIES the parties motions in limine [60-1 to 69-1] as stated herein. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 17 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 03 JUL 15 PM 1:14 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRUSTMARK INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | Hon. Blanche M. Manning |
| ) | |
| v. ) | 00 C 1926 |
| ) | |
| GENERAL COLOGNE LIFE RE ) | |
| OF AMERICA, ) | |
| ) | **DOCKETED** |
| Defendant. ) | JUL 1**1** 2003 |

## MEMORANDUM AND ORDER

Plaintiff Trustmark Insurance Company ("Trustmark") brought the instant diversity action for breach of contract and promissory estoppel against Defendant General Cologne Life Reinsurance of America ("Cologne") stemming from an alleged joint venture agreement that Cologne allegedly entered into with Trustmark to reinsure a block of individual disability insurance ("IDI") policies. The instant matter comes before the Court on the parties' motions in limine. For the reasons that follow, the motions are DENIED.

## BACKGROUND[1]

From 1998 to 1999, Trustmark and Cologne discussed the possibility of investing in a reinsurance agreement to reinsure blocks of IDI policies.[2] In researching the potential purchase of IDI blocks, Cologne and Trustmark did not codify their intentions in a single document.

---

[1] The facts of this case are thoroughly discussed in this Court's prior Memorandum and Order [36-1]. Thus, the Court will only review the facts as they relate to the instant motions.

[2] A reinsurance agreement is an agreement whereby a reinsurer agrees to indemnify an insurance company for payments owed by the insurance company on a block of defined insurance policies which the insurance company has underwritten. In exchange for indemnifying the insurance company, the reinsurer receives a portion of the premiums paid on the policies.

During the course of investigating various IDI blocks, Trustmark, Cologne, and John Hewitt & Associates ("JHA"), a subsidiary of Cologne, performed due diligence on a block of 7,000 IDI policies underwritten by Hartford Life Insurance Company ("Hartford") ("the Hartford Block"). On October 28, 1998, after conducting due diligence on the Hartford Block, Trustmark signed a Letter of Intent with Hartford to acquire the IDI block ("the Letter of Intent"). Cologne, however, did not sign and was not mentioned in the Letter of Intent.

Trustmark contends that it only executed the Letter of Intent after Cologne reviewed the Letter of Intent and agreed to share in the risk of reinsuring the Hartford Block. Without Cologne's approval, Trustmark alleges that it would never have entered into the Letter of Intent. Cologne, on the other hand, denies that it agreed to participate in reinsuring the Hartford Block. The Letter of Intent stated that "time is of the essence" and that the Final Purchase Agreement for the Hartford Block ("the Final Purchase Agreement") would be executed no later than December 1, 1998, "unless a later date is mutually agreed upon." The Final Purchase Agreement, however, was not signed until December 28, 1999. Like the Letter of Intent, Cologne was not mentioned in the Final Purchase Agreement, nor did it sign the agreement.

Prior to the execution of the Final Purchase Agreement, on September 3, 1999, Cologne informed Trustmark that it was no longer interested in sharing in the risk on the Hartford Block. Although Cologne had disavowed any interest in reinsuring the Hartford Block and Trustmark was facing significant losses, Trustmark contends that it was bound to enter into the Final Purchase Agreement by the Letter of Intent. Cologne, on the other hand, contends that by December 1999, Trustmark was no longer bound by the Letter of Intent.

After Cologne refused to accept any liability on the Hartford Block, Trustmark brought

the instant action seeking: (1) a declaratory judgment that Cologne is obligated under an alleged joint venture agreement that it made with Trustmark to reinsure the Hartford Block (Count I); (2) specific performance under the alleged agreement (Count II); (3) damages for breach of contract (Count III); (4) damages for breach of fiduciary duty (Count IV); and (5) damages for promissory estoppel (Count V).

After substantial discovery, Cologne brought a motion for summary judgment. Before Cologne filed its motion for summary judgment, however, Trustmark filed its motion for leave to amend its original complaint to add a sixth count of equitable estoppel. The sixth count of equitable estoppel stated that Cologne, directly and through its subsidiary and agent, JHA, failed to perform adequate due diligence and consequently misrepresented the value of the Hartford Block.

On October 22, 2001, the Court granted Cologne's motion for summary judgment on Counts I-IV (breach of contract claims) on the grounds that Trustmark had failed to show that a joint venture existed. The Court, however, denied the motion as to Count V (claim for promissory estoppel) on the grounds that there is a question of fact as to whether Trustmark: (1) reasonably relied on an unambiguous promise to its detriment. The Court also denied Trustmark's motion for leave to amend its original complaint. On May 23, 2002, the Court denied the parties' motions to alter or amend the October 22, 2001 Memorandum and Order.

This matter is currently set for a bench trial on August 4, 2003.[3] The present matter comes before the Court on the parties' motions in limine.

---

[3] After the dismissal of four of its five claims, Trustmark withdrew its jury demand.

## ANALYSIS

Both parties have brought motions in limine to exclude certain evidence from trial. Trustmark seeks to exclude: (1) the expert testimony of William Bossi; (2) evidence that Trustmark did not timely execute the Final Purchase Agreement with Hartford; (3) evidence of any differences between the terms of the Letter of Intent and the Final Purchase Agreement; and (4) Cologne from using the affirmative defense of unclean hands. Cologne seeks to bar: (1) evidence of monetary damages to Trustmark; (2) evidence that Cologne maintained "reserves against losses on the Hartford Block"; (3) the expert testimony of Michael Koopersmith and James Schacht; (4) evidence of proposals to third-party insurers after October 28, 1998; and (5) evidence concerning alleged deficiencies in the valuation of the Hartford IDI block by Vincent Demarco.

Because most of the above motions pertain to the relevance of the anticipated evidence, before discussing these specific motions, the Court will first address what factual issues are relevant to the one remaining claim – promissory estoppel – to be decided at trial. As discussed in this Court's prior opinion, to prevail on its promissory estoppel claim, Trustmark must show: (1) an "unambiguous promise" by Cologne to Trustmark to reinsure the Hartford Block; (2) Trustmark relied on the promise in entering into the reinsurance agreement with Hartford; (3) Trustmark's reliance was "expected and foreseeable" by Cologne; and (4) Trustmark actually relied on the promise to its detriment. Cohabaco Cigar Co. v. United States Tobacco Co., 1999 WL 988805, at *10 (N.D. Ill. Oct. 22, 1999); Hall v. Nat'l Collegiate Athletic Assoc., 985 F. Supp. 782, 796 (N.D. Ill. 1997).

In denying Cologne's motion for summary judgment as to the promissory estoppel claim,

this Court found that: (1) Trustmark set forth sufficient facts to show that Cologne unambiguously promised to share in a specific percentage of the risk on the Hartford Block; (2) a question of fact existed as to whether Trustmark reasonably relied upon Cologne's promise to reinsure 50% of the Hartford Block when it entered into the Letter of Intent; and (3) a genuine issue of material fact existed as to whether Trustmark detrimentally relied on Cologne's promise. In making this finding, this Court relied on the deposition of Cologne's Perkins, one of the Cologne personnel who worked closely with Trustmark in the investigation of the Hartford Block, who testified that at the time Cologne received a copy of the signed Letter of Intent that "it was [his] expectation that Cologne would reinsure 50 percent of the [Hartford Block]," and he understood that "Trustmark believed that Cologne was going to accept 50 percent of the risk." (Perkins Dep. at 386-88.)

Whether Cologne relied on this promise to its detriment, hinges upon whether the Letter of Intent compelled Trustmark to enter into the Final Purchase Agreement. It is undisputed that the Letter of Intent stated that it was binding on the parties "in accordance with its terms." Cologne, however, contends that the Final Purchase Agreement contained material differences from the Letter of Intent, and therefore, Trustmark was no longer bound by the Letter of Intent. Thus, according to Cologne, Trustmark entered into the Final Purchase Agreement on its own accord and not based on any promise by Cologne. In response, Trustmark contends that any differences in the terms were slight and at most constitute a minor variance from the terms in the Letter of Intent. Therefore, it was required by the Letter of Intent to enter into the Final Purchase Agreement. Because both parties cited facts to support their assertions, this Court found that a question of material fact exists as to whether Trustmark was bound by the Letter of Intent and

5

thus detrimentally relied on Cologne's promise.

Relevant evidence is defined by the Federal Rules as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. This broad definition allows background evidence to be "universally offered and admitted as an aid to understanding." Fed. R. Evid. 401 Advisory Committee's Note. Relevant evidence contains two components: materiality and probative value. McCormick on Evidence, § 185 at 773 (4th ed.1992). Material evidence constitutes evidence that helps prove a matter at issue. Id. Probative value is the material evidence's ability to establish the proposition it is offered to prove, and that which helps establish probability of a fact. Id. at 774.

Accordingly, evidence here will be deemed relevant if it bears on whether Trustmark reasonably relied upon an "unambiguous promise" by Cologne to its detriment.

For organizational purposes, the Court will first address both parties' motions concerning expert witnesses followed by Trustmark's motions and then Cologne's motions. First, however, the Court will briefly examine the applicable legal standard for motions in limine.

"In general, federal district courts have the power to exclude evidence in limine pursuant to their inherent authority to manage trials." Farley v. Miller Fluid Power Corp., No. 94 C 2273, 1997 WL 757863, at *1 (N.D. Ill. Nov.24, 1997). A motion in limine may be used to insulate the jury from potentially harmful or unfairly prejudicial evidence. McCormick on Evidence, § 52 at 202-203 (4th ed.1992). A court, however, is limited to excluding, in limine, only such evidence that is clearly inadmissible on all possible grounds. Farley, 1997 WL 757863, at *1. As a result, "when admissibility determinations are not clear, evidentiary rulings must be deferred until trial

so questions of foundation, relevancy, and prejudice can be resolved in their proper context." Marlow v. Winston & Strawn, No. 90 C 5715, 1994 WL 424124, at *1 (N.D. Ill. Aug.11, 1994).

With these standards in mind, the Court now turns to the parties' specific motions.

I.    **Motions to Exclude Expert Testimony**

The parties have moved to exclude the testimony of anticipated expert witnesses on the grounds that their testimony is not relevant and/or that the experts' proffered opinions are not reliable. Before discussing the specific motions, however, the Court will review the standard that courts apply in determining whether an expert witness' testimony is reliable.[4]

Use of expert testimony in federal court is governed by Federal Rule of Evidence 702, which states that: "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise." In determining the reliability of an expert, the district court should: (1) determine whether the expert is qualified in the relevant field; and (2) examine the methodology the expert used in reaching his conclusions. Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000). An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Extensive academic and practical expertise" in an area is sufficient to qualify a witness as an expert. Bryant v. City of Chicago, 200 F.3d 1092, 1098 (7th Cir.2000). However, "the Federal Rules of Evidence, which Daubert interprets rather than overrides, do not require that expert witnesses be academics or PhDs, or that their testimony be 'scientific' (natural scientific or social scientific) in character. Anyone with relevant expertise enabling him or her to

---

[4]    The standard for determining relevance is set forth above.

7

offer responsible opinion testimony helpful to the judge or jury may qualify as an expert witness." Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000). Rule 702 "specifically contemplates the admission of testimony by experts whose knowledge is based on experience." Walker v. Soo Line R.R. Co., 208 F.3d 581, 591 (7th Cir. 2000). Thus, a court should consider a proposed expert's full range of practical experience when determining whether that expert is qualified to render an opinion in a given area. Ford Motor Co., 215 F.3d at 718. The court must look to whether "[i]t was appropriate for [the expert] to rely on the test that he administered and upon the sources of information which he employed." Walker, 208 F.3d at 587. The court's gatekeeping function focuses on an examination of the expert's methodology, while "[t]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact. . . ." Ford Motor Co., 215 F.3d at 718.

Moreover, Courts often determine reliability based upon personal knowledge or experience of the proposed witness. For example, in United States v. Cruz-Velasco, 224 F.3d at 659-60, the Seventh Circuit held that the district court correctly allowed a DEA agent to testify as an expert witness regarding the "nature, structure, and characteristics of drug trafficking operations based on the agent's extensive experience in investigating drug traffickers." Likewise, in United States v. Brumley, 217 F.3d 905, 910-11 (7th Cir. 2000), the Seventh Circuit rejected the defendant's contention that the expert's opinion was not based on a sound methodology and affirmed the district court's decision to allow a DEA agent to testify concerning what amounts of methamphetamine constitutes user and dealer quantities based on the agent's seven years of law enforcement experience, "much of it involving investigations relating to narcotics and other

8

drugs, including methamphetamine." Moreover, in United States v. Yoon, 128 F.3d 515, 527 (7th Cir. 1997), the Seventh Circuit upheld the district court's decision to allow an FBI agent to testify that the defendant's actions were consistent with "check-kiting." The agent's methodology consisted of analyzing bank records and then using a computer program to analyze the data. Id.

Here, Trustmark seeks to exclude the testimony of William Bossi, while Cologne has moved to bar the expert testimony of Michael Koopersmith and James Schacht. Both parties contend that the proposed expert testimony is not relevant and not reliable. All three experts' testimony pertains to the valuation of the Hartford Block by JHA. As discussed herein, the valuation of the Hartford Block is relevant to whether Trustmark reasonably relied on Cologne's promise to its detriment. Thus, the only question is whether the experts' testimony is sufficiently reliable. Because this is a bench trial, this Court is sufficiently able to assess the experts' level of experience and qualifications in weighing their opinions. Consequently, the motions to bar the experts' testimony are denied.

**II.    Trustmark's Motions**

In addition to moving to exclude the testimony of Cologne's experts, Trustmark seeks to bar Cologne from putting forth evidence showing that: (1) Trustmark did not execute the Final Purchase Agreement until December 28, 1999 – past the December 1, 1998, deadline set forth in the Letter of Intent; and (2) the Letter of Intent and the Final Purchase Agreement contained material differences.

After examining the factual record, this Court finds that whether the Final Purchase Agreement was timely executed and whether there were differences between the terms of the

9

Letter of Intent and the Final Purchase Agreement is relevant as to whether Trustmark justifiably relied on a promise by Cologne to its detriment. Whether Trustmark relied on the alleged promise to its detriment, hinges upon whether the Letter of Intent bound Trustmark to enter into the Final Purchase Agreement. Cologne contends that on September 3, 1999, when it notified Trustmark that it was no longer interested in reinsuring the Hartford Block, Trustmark was not required to enter into the Final Purchase Agreement. Therefore, according to Cologne, Trustmark entered into the Final Purchase Agreement on its own accord and not under the belief that Cologne would reinsure the Hartford Block. Trustmark contests this assertion and contends that any differences in the terms were slight and at most constitute a minor variance from the terms in the Letter of Intent, and therefore, it was required by the Letter of Intent to enter into the Final Purchase Agreement regardless of the date.

This Court thus finds that whether the Final Purchase Agreement was timely executed and contains material differences from the Letter of Intent is relevant as to whether Trustmark reasonably relied upon Cologne's alleged promise to its detriment. Consequently, this Court denies these motions in limine.

Trustmark also requests that this Court bar Cologne from using the affirmative defense of unclean hands and preclude Cologne from introducing evidence related to this defense. Because this Court has not had an opportunity, other than reading the affirmative defense in Cologne's answer, to assess whether this is a valid defense, the Court take this issue under advisement to be ruled upon in the context of the evidence presented at the trial of this case.

**III.    Cologne's Motions**

Cologne seeks to exclude: (1) evidence of monetary damages by Trustmark; (2) evidence that Cologne maintained "reserves against losses on the Hartford Block"; (3) evidence of proposals to third-party insurers after October 28, 1998; and (4) evidence concerning alleged deficiencies in the valuation of the Hartford Block by Vincent Demarco. The Court will discuss each of these contentions in turn.

First, Cologne contends that evidence of monetary damages are irrelevant because Illinois law precludes an award of monetary damages. After examining Illinois law, this Court finds this contention to be without merit. As discussed in this Court's prior opinion denying the parties' motions to reconsider, to remove an action from the operation of the statute of frauds under the doctrine of part performance, the plaintiff "must request equitable relief." Owen v. Mark Twain Boat Co., Inc., 1990 WL 133227, at *5 (N.D. Ill. Sept. 12, 1990). See also Dickens v. Quincy College Corp., 615 N.E.2d 381, 385 (Ill. App. Ct. 1993); Cohn v. Checker Motors, 599 N.E.2d 1112 (Ill. App. Ct. 1992). Thus, where a plaintiff "seeks only money damages," the partial performance exception to the statute of frauds is unavailable. Fischer Inc. v. First Chicago Capital Markets, Inc., 195 F.3d 279, 283 (7th Cir. 1999).

Here, in its prayer for relief in its claim for promissory estoppel (Count V), Trustmark seeks "actual monetary damages according to proof at trial." (Compl. at ¶ 47.) However, Trustmark sought equitable relief in Counts I and II and these counts were incorporated into Count V. Therefore, although not specifically requested in Count V, this Court finds that Trustmark's claim for promissory estoppel did seek both equitable and monetary relief. Consequently, this Court finds that evidence of monetary damages is relevant to the trial of this

11

action and the motion in limine is thus denied.

Cologne also seeks to bar evidence that it maintained "reserves against losses on the Hartford Block" on the grounds that such evidence is not relevant. After carefully reviewing the evidence, this Court finds that this evidence is indeed relevant to whether Cologne made an unambiguous promise to insure half of the Hartford Block and whether Trustmark reasonably relied on this promise. If Cologne established reserves to insure the Hartford Block and Trustmark was aware of this fact, it would appear reasonable for Trustmark to rely on this fact when it entered into the Letter of Intent as proof that Cologne would share in the risk of the Hartford Block. Therefore, the motion in limine regarding the reserves is denied.

Additionally, Cologne seeks to exclude evidence of proposals that it allegedly made to insureds other than Hartford after the date Trustmark entered into the Letter of Intent – October 28, 1998. Without having examined the specifics of these transactions, this Court is unable to determine at this time whether these proposals are relevant to the issue at hand. Therefore, this Court takes this motion under advisement to be ruled on in the context of the evidence offered at trial.

Finally, Cologne has moved to bar evidence concerning alleged deficiencies in the valuation of the Hartford Block by Vincent Demarco. Mr. Demarco worked for John Hewitt & Associates ("JHA"), a subsidiary of Cologne, and performed due diligence on the Hartford Block. At this time, this Court finds that Mr. Demarco's valuation is relevant to whether Trustmark reasonably relied on Cologne's promise to its detriment. Consequently, this motion is denied without prejudice with leave to renew at trial should the evidence warrant such reconsideration.

## CONCLUSION

For the foregoing reasons, this Court DENIES the parties motions in limine [69-1 to 60-1] as stated herein. It is so ordered.

ENTER:

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: __7-11-03__